UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 69.75.46.123,<br><br>         Defendants. | Case No.: 3:17-cv-2312-MMA-NLS<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE**<br><br>**[ECF No. 4]** |

  Before the Court is Plaintiff Strike 3 Holdings, LLC's ("Plaintiff") *Ex Parte* Motion for Leave to Serve a Third Party Subpoena Prior to a Rule 26(f) Conference. ECF No. 4. No Defendant has been named or served, and so no opposition or reply briefs have been filed. For the reasons discussed below, the Court **GRANTS** Plaintiff's motion.

 **I. Background**

  This is one of numerous cases filed by Plaintiff alleging copyright infringement against a defendant using the BitTorrent file-sharing system.[1] On November 14, 2017,

---

[1] On November 14, 2017, Strike 3 holdings filed eight separate cases against John Does in this District: 17cv2302-MMA-JLB; 17cv2312-MMA-NLS; 17cv2313-AJB-JMA;

1

Plaintiff filed this Complaint against "John Doe," who is allegedly a subscriber of Spectrum/Time Warner Cable and assigned Internet Protocol ("IP") address 69.75.46.123 ("Defendant"). ECF No. 1, ¶ 5. Plaintiff alleges Defendant infringed its copyrights by using the BitTorrent file distribution network, one of the most common peer-to-peer file sharing systems used to distribute data such as digital movie files. *Id.* at ¶¶ 17-19. Plaintiff alleges Defendant downloaded, copied, and distributed several of Plaintiff's works without authorization. *Id.* at ¶¶ 23, 26-27, 31, 35-37, Ex. A to Compl.

Plaintiff seeks leave to conduct early discovery to learn the identity of the subscriber of the IP address from the Internet Service Provider ("ISP") who leased the address. Specifically, Plaintiff seeks an order permitting it to serve a third party subpoena under Federal Rule of Civil Procedure 45 on Time Warner Cable that would require it to supply the name and address of its subscriber to Plaintiff. ECF No. 4-1 at 2. Plaintiff does not seek the telephone number or email address of the subscriber associated with Defendant's IP address. *Id.* ("This subpoena will only demand the true name and address of the Defendant.")

## II. Legal Standard

A party is generally not permitted to obtain discovery without a court order before the parties have conferred pursuant to Federal Rule of Civil Procedure 26(f). Fed. R. Civ. P. 26(d)(1). However, courts make exceptions to allow limited discovery after a complaint is filed to permit the plaintiff to learn the identifying information necessary to serve the defendant. *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999). A party who requests early or expedited discovery must make a showing of good cause. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002) (applying "the conventional standard of good cause in evaluating Plaintiff's request for expedited discovery"). Good cause exists "where the need for

---

17cv2315-MMA-AGS; 17cv2316-GPC-KSC; 17cv2317-JAH-BLM; 17cv2318-DMS-BLM; and 17cv2319-JAH-BGS.

expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at 276.

"The Ninth Circuit has held that when the defendants' identities are unknown at the time the complaint is filed, courts may grant plaintiffs leave to take early discovery to determine the defendants' identities 'unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *808 Holdings, LLC v. Collective of December 29, 2011 Sharing Hash*, 2012 WL 1648838, *3 (S.D. Cal. May 4, 2012) (*quoting Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). "A district court's decision to grant discovery to determine jurisdictional facts is a matter of discretion." *Columbia Ins.*, 185 F.R.D. at 578 (*citing Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

To determine whether "good cause" exists to permit expedited discovery to identify John Doe defendants, district courts in this Circuit consider whether the plaintiff (1) "identif[ies] the missing party with sufficient specificity such that the Court can determine that the defendant is a real person or entity who could be sued in federal court"; (2) "identif[ies] all previous steps taken to locate the elusive defendant" to ensure that plaintiff has made a good faith effort to identify the defendant; and (3) "establish[es] to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss." *Columbia Ins.*, 185 F.R.D. at 578-80. Additionally, the plaintiff should demonstrate the discovery will likely lead to identifying information that will permit service of process. *Id.* at 580. These factors are considered to ensure the expedited discovery procedure "will only be employed cases where the plaintiff has in good faith exhausted traditional avenues for identifying a civil defendant pre-service, and will prevent use of this method to harass or intimidate." *Id.*

**III. Discussion**

**a. Identification of Missing Party with Sufficient Specificity**

Plaintiff must identify Defendant with enough specificity to enable the Court to determine that Defendant is a real person or entity who would be subject to the

jurisdiction of this Court. *Columbia Ins.*, 185 F.R.D. at 578. Some district courts in this Circuit have determined that "a plaintiff identifies Doe defendants with sufficient specificity by providing the unique IP addresses assigned to an individual defendant on the day of the allegedly infringing conduct, and by using 'geolocation technology' to trace the IP addresses to a physical point of origin." *808 Holdings*, 2012 WL 1648838, at *4; *see Openmind Solutions, Inc. v. Does 1-39*, 2011 U.S. Dist. LEXIS 116552, at *6, (concluding that plaintiff satisfied the first factor by identifying the defendants' IP addresses and by tracing the IP addresses to a point of origin within the State of California); *see also Pink Lotus Entm't v. Does 1-46*, 2011 U.S. Dist. LEXIS 65614, *6 (same). Others have concluded that merely identifying the IP addresses on the day of the alleged infringement satisfies this factor. *808 Holdings*, 2012 WL 1648838, at *4 (citing cases).

Here, Plaintiff provided the Court with sufficient specificity that it seeks to sue a real person subject to this Court's jurisdiction. In support of its identification of the missing party, Plaintiff provides declarations and factual contentions with evidentiary support in its complaint. Specifically, Plaintiff provides declarations from Plaintiff's investigator, Tobias Fieser who is IPP International UG's employee and from a second independent forensic investigator, John S. Pasquale.

Mr. Fieser is an employee in the litigation support department of IPP International UG ("IPP"). IPP provides forensic investigation services to copyright owners. ECF No. 4-2, ¶ 4.) Mr. Fieser testifies that IPP monitors the BitTorrent file distribution network to find IP addresses that are used to distribute Plaintiff's copyrighted works without authorization. *Id.*, ¶ 5. He attests he reviewed IPP's forensic activity logs and determined its servers connected to an electronic device using IP address 69.75.46.123 and that the IPP software determined that IP address was distributing digital content including "pieces of Strike 3's copyrighted movies listed on Exhibit A to Strike 3's Complaint. [¶] Each piece was recorded in a PCAP, which stands for 'packet capture' and is a forensically sound interface for recording network traffic." *Id.* at ¶¶ 7-8. He

4

further attests that IPP's software "verified that reassembling the pieces using a specialized BitTorrent client results in a fully playable digital movie." *Id.* at ¶ 9. Mr. Fieser testifies that a digital file can be identified by a "Crytographic Hash Value" and that IPP software "determined the files being distributed by Defendant's IP address have a unique identifier of the Crytographic Hash outlined on Exhibit A." *Id.* at ¶ 10. Finally, Mr. Fieser testifies that "IP address 69.75.46.123 is associated with significant long term BitTorrent use." *Id.* at ¶ 12.

Mr. Pasquale is a project manager for 7 River Systems, a cyber security firm, and specializes in system and network administration and project management. ECF No. 4-2 at ¶¶ 3-4. Mr. Pasquale was retained to analyze the data collected by IPP. *Id.* at ¶ 6. He received a PCAP and used a program called Wireshark to view the contents and confirm the accuracy of the date and time of a single transaction associated with the IP address in question. *Id.* at ¶ 9. Mr. Pasquale also attests that in his experience, Time Warner Cable is the only entity that can correlate the IP address to its subscriber. *Id.* at ¶ 10.

The factual contentions in Plaintiff's Complaint trace the allegedly offending IP address to this District. Plaintiff states that it "used IP address geolocation technology by Maxmind Ind. ("Maxmind"), an industry-leading provider of IP address intelligence and online fraud detection tools, to determine that Defendant's IP address traced to a physical address in this district." ECF No. 1 at 2, ¶ 9. Based on Exhibit A to the Complaint, the dates of the alleged infringement occurred recently, between May–September, 2017. The Court is therefore satisfied that any geolocation trace occurring between the dates of alleged infringement and the date of the filing of the Complaint that traces the Defendant to this District is likely to be accurate.

Based on this evidence and information, the Court finds Plaintiff satisfied the "sufficient specificity" threshold. Plaintiff provides the Court with information about the allegedly infringing activity at a particular IP address, including the dates and times of particular infringing activity. ECF No. 1-2 (Ex. A. to the Complaint). Plaintiff also states in its Complaint that it narrowed the activity to a specific IP address, and that it

used geolocation technology to trace the identified IP address to within this District. Accordingly, the Court concludes Plaintiff provided a sufficient showing that it seeks to sue a real person subject to the Court's jurisdiction. Likewise, if Plaintiff obtains the identifying information from the ISP for the subscriber assigned the IP address at issue, the information sought in the subpoena would likely enable Plaintiff to serve the Defendant.

### b. Previous Attempts to Locate Defendants

Second, Plaintiff must describe all previous steps taken to locate the Defendant to ensure that Plaintiff made a good faith effort to identify the Defendant. Here, Plaintiff states that it diligently attempted to locate Defendant by searching for Defendant's IP address using online search engines. ECF No. 4-1 at 8. Plaintiff also states it engaged in diligent research to attempt to identify Defendant using other means, and also extensively discussed this issue with its computer investigators and cyber security consultants. *Id.* Plaintiff states that despite its diligent efforts, it is unable to identify any means of obtaining the identity of the Defendant other than through subpoenaing the information from the ISP. *Id.*; *see also* ECF No. 4-3 at ¶ 10 ("Based on my experience in similar cases, Defendant's ISP Time Warner Cable is the only entity that can correlate the IP address to the subscriber…"). In light of this information, the Court finds Plaintiff made a good faith effort to identify and locate the Defendant.

### c. Whether Plaintiff Can Withstand a Motion to Dismiss

To survive a motion to dismiss, Plaintiff must make a *prima facie* case of copyright infringement. A plaintiff must show: (1) ownership of a valid copyright; and (2) that Defendant violated the copyright owner's exclusive rights under the Copyright Act. *Range Road Music, Inc. v. East Coast Foods, Inc*., 668 F.3d 1148, 1153 (9th Cir. 2012). Here, Plaintiff alleges it is the owner of the copyrights-in-suit. ECF No. 1 at ¶ 35. Plaintiff also submits the declarations of Greg Lansksy and Susan B. Stalzer. Mr. Lansky is a member of General Media Systems, the parent company that owns Strike 3. Mr. Lansky testifies that "Strike 3 owns the intellectual property to the Blacked, Tushy, and

Vixen adult brands, including the copyrights to each of the motion pictures distributed through Blacked, Tushy and Vixen and the trademarks to each of the brand names and logos." ECF No. 4-2 at ¶ 3. Ms. Stalzer is an employee of Strike 3 Holdings attests IPP provided her with the files correlating to the hashes identified in Exhibit A to the Complaint. ECF No 4-2 at ¶ 8. She compared the files IPP provided side by side to Strike 3's works and attests that the works are identical, strikingly similar or substantially similar to Strike 3's original copyrighted works. *Id.* at ¶¶ 9-10. Plaintiff also alleges that Defendant used BitTorrent to copy and distribute the elements of the original works covered by the copyrights-in-suit without authorization. ECF No. 1 at ¶¶ 36-37.

Plaintiff alleges sufficient facts to show it can withstand a motion to dismiss for lack of personal jurisdiction and withstand a motion for improper venue because Defendant's IP address was traced to a location in this District. ECF No. 1 at ¶¶ 7-10. Accordingly, the Court concludes Plaintiff has alleged a *prima facie* showing of copyright infringement that would likely withstand a motion to dismiss.

### d. Additional Considerations

Notwithstanding the above conclusions, the Court notes the growing concerns about "copyright trolls," which are "roughly defined as plaintiffs who are 'more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service.'" *Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 87751, * 2 (S.D.N.Y. July 6, 2015) (*quoting* Matthew Sag, Copyright Trolling, An Empirical Study, 100 Iowa L. Rev. 1105, 1108 (2015)). As one district court recently noted, the "danger of copyright trolls is particularly acute in the context of pornography." *Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 35534 (E.D. Cal. Mar. 18, 2016). "In these cases, 'there is a risk not only of public embarrassment for the misidentified defendant, but also that the innocent defendant may be coerced into an unjust settlement with the plaintiff to prevent the dissemination of

publicity surrounding unfounded allegations.'" *Id.* (*quoting Media Prods., Inc. v. Doe*, 2012 U.S. Dist. LEXIS 84111, at *4 (S.D.N.Y June 18, 2012).[2]

This Court likewise "shares the growing concern about unscrupulous tactics used by certain plaintiffs, especially in the adult film industry, to shake down the owners of IP addresses" to exact quick and quiet settlements from possibly innocent defendants who pay out only to avoid potential embarrassment. *Malibu Media, LLC v. Does 1-5*, 2012 U.S. Dist. LEXIS 77469, *1 (S.D.N.Y. June 1, 2012). Here, Plaintiff does little to alleviate the Court's concern; to the contrary, the declarations submitted extol the rampant nature of piracy in this industry but offer nothing regarding prudence in proceeding with claims. Plaintiff does invite the Court to issue a protective order establishing procedural safeguards, and the Court will do so. *See e.g., Malibu Media v. Doe,* 2014 U.S. Dist. Lexis 79595, *5 (M.D. Fla. Apr. 10, 2014) (imposing conditions and citing cases that do the same); *see also Malibu Media, LLC v. Doe*, 2016 U.S. Dist. LEXIS 35534, *17 (E.D. Cal. Mar. 18, 2016).

///

///

///

///

///

---

[2] This is particularly so because "[t]he fact that a copyrighted work was illegally downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer. Indeed, the true infringer could just as easily be a third party who had access to the internet connection, such as a son or daughter, houseguest, neighbor, or customer of a business offering internet connection." *Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 87751, *14 (S.D.N.Y. July 6, 2015) (*quoting Patrick Collins, Inc. v. Does 1-6,* 2012 U.S. Dist. LEXIS 77486 *1 (S.D.N.Y. June 1, 2012) (internal citations omitted). Nonetheless, it is not clear to this Court how Plaintiff could discover this information without first identifying the subscriber to the IP address and making appropriate inquiries. *Dead Season LLC v. Doe*, 2013 U.S. Dist. LEXIS 101993, *16 (D. Ariz. July 19, 2013) (concluding the same).

**IV. Conclusion**

For good cause shown, the Court **GRANTS** Plaintiff's *ex parte* motion for leave to serve a subpoena prior to a Rule 26(f) conference. It is **ORDERED** that:

1. Plaintiff shall attach a copy of this Order to any subpoena.
2. Plaintiff may serve the ISP with a Rule 45 subpoena commanding the ISP to provide Plaintiff with **only** the true name and address of the Defendant to whom the ISP assigned an IP address as set forth on Exhibit A to the Complaint. The ISP is **not** to release the Defendant's telephone number or email address.
3. Within fourteen (14) calendar days after service of the subpoena, the ISP shall notify the subscriber that his or her identity has been subpoenaed by Plaintiff. The ISP must also provide a copy of this Order along with the required notice to the subscriber whose identity is sought pursuant to this Order.
4. The subscriber whose identity has been subpoenaed shall have thirty (30) calendar days from the date of such notice to challenge the disclosure of his or her name and contact information by filing an appropriate pleading with this Court contesting the subpoena. A subscriber who moves to quash or modify the subpoena may proceed anonymously as "John Doe," and shall remain anonymous until the Court orders that the identifying information can be released.
5. If the ISP wishes to move to quash the subpoena, it shall do so before the return date of the subpoena. The return date of the subpoena must allow for at least forty-five (45) days from service to production. If a motion to quash or other challenge is brought, the ISP shall preserve the information sought by Plaintiff in the subpoena pending resolution of such motion or challenge.
6. Plaintiff may only use the information disclosed in response to a Rule 45 subpoena served on the ISP for the purpose of protecting and enforcing

Plaintiff's rights as set forth in its Complaint. If the Defendant wishes to proceed anonymously, Plaintiff may not release any identifying information without a court order allowing the release of the information.

**IT IS SO ORDERED.**

Dated: December 7, 2017

Hon. Nita L. Stormes
United States Magistrate Judge